IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | § | |
| *Applicant-Movant*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 7:23-cv-00107 |
| WILLIAM SNYDER AND SHIRLEY | § | |
| SNYDER, | § | |
| *Adverse Parties-Respondents*. | § | |

---

**WELLS FARGO BANK N.A.'S REPLY IN SUPPORT OF
APPLICATION TO CONFIRM ARBITRAL AWARD**

---

TO THE HONORABLE DAVID COUNTS:

Applicant Wells Fargo Bank, N.A. files this Reply in Support of its Application to Confirm Arbitral Award to respond to the opposition filed by Respondents William and Shirley Snyder (the "Response"). *See* Doc. 3. In support, Wells Fargo respectfully shows as follows:

### SUMMARY OF REPLY

The Court must confirm the Final Award under 9 U.S.C. § 9 because the Snyders have failed to meet their heavy burden to demonstrate the existence of any one of the four exclusive, statutory grounds supporting vacatur under 9 U.S.C. § 10. The arbitration record confirms the following:

- the Parties *agreed* that their dispute would be resolved by the American Arbitration Association ("AAA") under the Consumer Arbitration Rules (the "AAA Rules");

- the Snyders *agreed* to an order compelling arbitration to be conducted by either the AAA or as otherwise subsequently agreed to by the Parties;

- the Snyders *unilaterally* selected AAA to initiate arbitration;

- the AAA Rules unequivocally authorized the arbitrator to establish a pleadings deadline, exercise discretion as to enforcing the pleadings deadline, and summarily dispose of the dispute by granting a dispositive motion;

- the Snyders *agreed* to a scheduling order that provided a December 31, 2022 pleadings deadline and procedures for filing a dispositive motion;

- the Snyders were *unopposed* to Wells Fargo's Motion for Leave to File a Dispositive Motion filed on March 1, 2023;

- the Snyders did *not* seek to amend their claim until April 18, 2023—the date their response to Wells Fargo's dispositive motion was due despite being provided with a copy of Wells Fargo's dispositive motion on March 1, 2023;

- the Snyders' proposed amended pleading completely reinvented their *legal* theory despite being based on the same underlying *facts* known to the Snyders at the time they filed their initial claim nine months earlier;

- the Snyders did *not* provide any facts explaining why they were unable to comply with the *agreed*-upon pleadings deadline; and

- the Snyders otherwise failed to address the *merits* of Wells Fargo's dispositive motion or provide *any* evidence in opposition, relying exclusively on their incorrect contention that they had the "right" to amend "freely."

The Final Award is simply a predictable product of the application of the *agreed*-upon AAA Rules in the AAA arbitral forum selected by the Snyders to (1) Wells Fargo's meritorious dispositive motion and (2) the Snyders' losing gamble that the arbitrator would allow them to file an opposed, amended pleading four months past the *agreed*-upon, arbitrator-ordered pleadings deadline.

The Snyders never objected at any point prior to issuance of the Final Award to being compelled to arbitrate, the AAA administering the arbitration, or the selection of the arbitrator. As a result, the Snyders waived their post-award objections premised on generalized, conclusory allegations of "fraud, misconduct, and bias" related to Wells Fargo's purported "history of influencing AAA in Wells Fargo's favor." Waiver aside, the Snyders only evidence in alleged support of their dubious challenge is inadmissible hearsay that predates the Final Award by six years.

SUMMARY OF ARBITRATION PROCEEDINGS

Wells Fargo limited its previous summary of the arbitration proceedings to matters relevant to its Application. *See* Doc. 1. In light of the Response, Wells Fargo supplements and re-summarizes the Arbitration proceedings to address the arguments contained in the Response.[1]

**The Dispute.** On February 9, 2022, the Snyders filed a state court action asserting negligence and breach-of-fiduciary-duty claims against Wells Fargo premised on Wells Fargo's alleged failure to report suspected elder financial abuse to Texas state agencies in violation of Chapter 281 of the Texas Finance Code. *See* Doc. 1-3 at 2–14.

**The Arbitration Agreement.** The Deposit Account Agreement governing the dispute required arbitration (the "Arbitration Agreement") and provided in relevant part:

> The American Arbitration Association (AAA) will administer each arbitration and the selection of arbitrators according to the AAA's Consumer Arbitration Rules (AAA Rules).
> . . . .
> The Federal Arbitration Act (Title 9 of the United States Code) governs this Arbitration Agreement and any arbitration between Wells Fargo and you. . . .
> . . . .
> Each arbitrator must be a licensed attorney with expertise in the laws applicable to the dispute's subject matter. The arbitrator will make a decision regarding the dispute based on applicable law, including any statutes of limitations. The arbitrator may award to either Wells Fargo or you any award or relief provided for by law.

Doc. 1-4 at 19.

**The Agreed Order Compelling Arbitration**. The Snyders and Wells Fargo "agreed and jointly requested" the state court to compel all claims to arbitration "before (1) either the American Arbitration Association ("AAA") pursuant to the terms of the agreements to arbitrate between Plaintiffs and Wells Fargo, or (2) as otherwise agreed to by the parties." Doc. 1-3 at 19. The Snyders admit that they chose to initiate arbitration with the AAA on July 8, 2022 (the

---

[1] Notably, none of the documents attached to the Snyders' response are properly authenticated.

"Arbitration"), through the filing of their Statement of Claim, which asserted the same allegations and claims against Wells Fargo as alleged in their state court lawsuit. *See* Doc. 3 at 10 (¶ 17); Doc. 1-4 at 2–12. The Snyders additionally filed the Deposit Account Agreement with AAA at the same time. *See* Doc. 1-4 at 13–76.

**The Uncontested Arbitrator Appointment**. The AAA appointed the Honorable James A. Daross to serve as arbitrator. Doc. 3-11 at 1. Arbitrator Daross previously served as the managing attorney in the Consumer Protection Division for the Office of the Attorney General of Texas.[2] **Ex. A** at 1. In this role, Arbitrator Daross represented, among others, (1) the State of Texas and the Office of Consumer Credit Commissioner in matters related to financial services litigation that included regulatory actions against financial institutions (including Wells Fargo) and (2) the Texas Department of Aging and Disability Services. **Ex. A** at 1.

**The Agreed Scheduling Order**. In late November and December 2022, the Parties' counsel conferred with respect to a proposed scheduling order governing the Arbitration.[3] *See* **Ex. B**. On December 14, 2022, the Parties jointly submitted an agreed proposed scheduling order to the Arbitrator.[4] *See* **Ex. C**. The proposed scheduling order included an agreed-upon deadline for the Snyders to amend their claims by December 31, 2022, and for the parties to complete discovery by April 22, 2023. **Ex. C**. The proposed scheduling order additionally included procedures consistent with AAA Rule R-33 for dispositive motions and an agreed-upon briefing schedule. *Compare* **Ex. C**, *with* Consumer Arbitration Rules, AMERICAN ARBITRATION ASSOCIATION,

---

[2] Attached here to as **Exhibit A** is a true and correct copy of Arbitrator Daross's resume provided by AAA to the Parties on October 12, 2022.

[3] Attached here to as **Exhibit B** is a true and correct copy of email correspondence between the Parties' counsel in November and December 2022 related to the submission of the proposed Report and Preliminary Management Hearing and Scheduling Order.

[4] Attached here to as **Exhibit C** is a true and correct copy of email correspondence between Wells Fargo's counsel and the Arbitrator jointly submitting the Parties' proposed Report and Preliminary Management Hearing and Scheduling Order.

*available at* https://adr.org/sites/default/files/Consumer%20Rules.pdf (last accessed Aug. 7, 2023) [hereinafter AAA RULE].

On December 15, 2022, the Arbitrator issued the scheduling order containing the agreed-upon deadlines and procedures related to amending claims, filing dispositive motions, and the discovery cutoff. *See* Doc. 3-12 at 1–2. The scheduling order cautioned: "All deadlines stated herein will be strictly enforced and adhered to in order to avoid unnecessary delay and to ensure an expeditious and fair resolution of this matter." *See* Doc. 3-12 at 5.

**Wells Fargo's Dispositive Motion**. On March 1, 2023, Wells Fargo filed its unopposed Motion for Leave to File a Dispositive Motion that included a copy of its proposed Rule 33 Dispositive Motion.[5] *See* **Ex. D**; *see also* Doc. 3 at 11 (¶ 22) (admitting non-opposition). On March 21, 2023, the Arbitrator granted leave and required Wells Fargo to file its dispositive motion on or before March 28, 2023, and the Snyders to file their response on or before April 18, 2023. Doc. 3-18 at 397.

On March 22, 2023, Wells Fargo filed the same Rule 33 Dispositive Motion that it had attached to its motion requesting leave three weeks earlier. *See* Doc. 1-4 at 148–193. Wells Fargo argued, among other things, that there is no private right of action under Chapter 281 of the Texas Finance Code and, as a result, the reporting obligations cannot establish the tort-based duties underlying the Snyders' claims. *See* Doc. 1-4 at 148–150 (citing *Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex. 1998)).

**The Snyders' Motion for Leave to Amend Pleadings**. On April 18, 2023, the Snyders filed a Motion for Leave to Amend Pleadings asserting that they needed to "to cure alleged deficiencies claimed in Wells Fargo's [Rule 33 Dispositive Motion]." Doc. 3-18 at 398–425. The

---

[5] Attached hereto as **Exhibit D** is a true and correct copy of Wells Fargo's Motion for Leave to File a Dispositive Moton filed in the Arbitration on March 1, 2023.

Snyders argued "there is good cause to permit the amendment because discovery in this case is still ongoing, and [the Snyders] have not previously sought to amend their Statement of Claim," and that they have a "right" to amend "freely." *See* Doc. 3-18 at 400.

On April 25, 2023, Wells Fargo filed its opposition arguing that, among other things, the Snyders failed to and could not otherwise establish good cause for filing an untimely amendment almost four months after the agreed-upon pleadings deadline expired, after Wells Fargo conducted discovery on the legal theory asserted in the initial pleading, and after Wells Fargo filed its Rule 33 Dispositive Motion.[6]  *See* **Ex. E**.  The proposed amendment sought to completely replace and reinvent the Snyders' legal theories premised on the same underlying facts that the Snyders have known about for at least the last nine months.  *See* **Ex. E**; *see also* **Ex. E** at 5 (summarizing the new legal theories contained in the proposed amended pleading).

**The Snyders' Response to Wells Fargo's Dispositive Motion**.  On April 18, 2023, the Snyders also filed their Opposition to Respondent Wells Fargo Bank, N.A.'s Rule 33 Dispositive Motion.  Doc. 3-18 at 421–25.  Therein, the Snyders argued only that the Arbitrator should deny the Dispositive Motion because the Snyders should be permitted leave to amend their pleading. *See* Doc. 3-18 at 421–25.  As noted in Wells Fargo's reply filed on April 25, 2023: "Claimants wholly fail to address the merits of Wells Fargo's Rule 33 Dispositive Motion. . . . Claimants' lack of discussion as to the merits coupled with their proposed abandonment of the legal theory forming the sole basis for their claims can only be construed as a concession that Wells Fargo's Rule 33 Dispositive Motion disposes of their existing claims as a matter of law."[7]  **Ex. F**.  The Snyders did

---

[6] Attached hereto as **Exhibit E** is a true and correct copy of Wells Fargo's Response in Opposition to Claimant's Motion for Leave to Amend Pleadings filed in the Arbitration on April 25, 2023.

[7] Attached hereto as **Exhibit F** is a true and correct copy of Wells Fargo's Reply in Support of Rule 33 Dispositive Motion filed in the Arbitration on April 25, 2023.

not claim that they needed additional discovery to respond to the Rule 33 Dispositive Motion.  *See* Doc. 3-18 at 421–25.

**The Interim Orders**.  On April 27, 2023, the Arbitrator issued an order denying the Snyders leave to amend their pleadings and granting Wells Fargo's take-nothing dispositive motion.  Doc. 1-4 at 194–97.  In support, the Arbitrator determined:

> All of the above claims constitute new legal theories, although they are based upon the same set of facts which served as the basis for Claimants' original Statement of Claim filed nine months ago. Claimants state that the amendment is necessary "to cure alleged deficiencies claimed in Wells Fargo's [Rule 33 Dispositive Motion]," However, Claimants do not otherwise set forth any facts which would constitute good cause for extending the period of time allowed in the December 15 Scheduling Order for amendment of pleadings. In light of Claimants' wholesale recasting of their entire legal framework, and the lack of showing of good cause, the Arbitrator finds that allowing the amendment would negatively affect the efficient resolution of the dispute.

Doc. 1-4 at 194.

**The Final Award**.  On June 5, 2023, the Arbitrator rendered a Final Award that the Snyders take nothing as to Wells Fargo for the reasons stated in its previous order and for those stated in Wells Fargo's Rule 33 Dispositive Motion.  *See* Doc. 3-18 at 434–35.

## LEGAL STANDARD OF REVIEW

Under the FAA, an application to confirm an arbitration award is "heard in the manner provided by law for the making and hearing of motions."  9 U.S.C. § 6.  "[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9).  The burden of proof is on the party opposing an application to confirm an award to show entitlement to an order vacating the award.  *See Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016).

"[J]udicial review of an arbitration award is extraordinarily narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)).  The Fifth Circuit has aptly described it as "among the narrowest known to the law."  *Del Casal v. E. Airlines, Inc*., 634 F.2d 295, 298 (5th Cir. 1981).

The Federal Arbitration Act ("FAA") provides the *exclusive* circumstances for vacating an arbitration award:

    (1)    the award was procured by corruption, fraud or undue means;

    (2)    evident partiality or corruption of the arbitrator;

    (3)    the arbitrator was guilty of prejudicial misconduct during the proceeding; and

    (4)    the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award was not made.

*See Hall St*., 552 U.S. at 584; 9 U.S.C. § 10(a)(1)–(4).

"These limited circumstances do not include vacating an arbitration award based upon the merits of the claims that were heard by arbitrators." *Dream Med. Group, L.L.C. v. Old S. Trading Co., L.L.C.*, No. 22-20286, 2023 WL 2366982, at *2 (5th Cir. Mar. 6, 2023) (per curiam).  Courts have "no business weighing the merits of the grievance" or "considering whether there is equity in a particular claim." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987) (quoting *United Steelworkers v. Am. Mfg. Co*., 363 U.S. 564, 568 (1960)).  "[W]hatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so." *Forsythe Intern., S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990).  "[A]ny doubts or uncertainties must be resolved in favor of upholding [the award]." *Cooper*, 832 F.3d at 544.

**ARGUMENTS AND AUTHORITIES**

The Snyders identify four separate grounds in alleged support of vacating the Final Award. *See* Doc. 3 at 15–21.  None have merit.

**A.    The Arbitrator conducted the Arbitration in accordance with the Arbitration Agreement and AAA Rules.**

The Snyders initially argue that the "the arbitrator exceeded his authority" by dismissing their claims "despite having good cause to permit [the Snyders'] request to amend their Statement of Claim." *See* Doc. 3 at 15–16.  While the Snyders appear to be referring to § 10(a)(4)'s "exceeded their powers" language, the Snyders do not attempt to explain how the Arbitrator exceeded the powers outlined in the Arbitration Agreement and AAA Rules.  Rather, the Snyders are improperly arguing that the Arbitrator simply reached the wrong result, which is not subject to this Court's review.  *See Rodgers v. United Services Auto. Ass'n*, No. 21-50606, 2022 WL 2610234, at *3 (5th Cir. July 8, 2022) (rejecting § 10(a)(4) challenge based solely on arguments that the arbitrator made errors in law and fact).  To the extent the Snyders are attempting to challenge the Arbitrator's authority under § 10(a)(4), the record conclusively defeats the challenge.

A party seeking to set aside an arbitral award under § 10(a)(4) "bears a heavy burden." *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569; *see also Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802–03 (5th Cir. 2013) (characterizing the standard as "highly deferential" and stating that "an arbitrator has not exceeded his powers unless he has utterly contorted . . . the 'essence' of the contract").  The United States Supreme Court explained:

> It is not enough to show that the arbitrator committed an error—or even a serious error. Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.  Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination.  So the sole question

9

for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

*Oxford Health Plans*, 569 U.S. at 569 (cleaned up).

Here, it is undisputed that the Parties expressly agreed that AAA "will administer each arbitration . . . according to the AAA's Consumer Arbitration Rules (AAA Rules)" and that the "arbitrator may award to either Wells Fargo or [the Snyders] any award or relief provided for by law." *See* Doc. 1-4 at 19. The agreed-upon AAA Rules unquestionably provided the Arbitrator with the discretionary power to deny the Snyders' untimely amendment and the power to grant Wells Fargo's dispositive motion.

<u>First</u>, the Arbitrator clearly had the agreed-upon discretion to deny the Snyders leave to file an untimely amendment to their claim. AAA Rule R-8 unequivocally vests the Arbitrator with the *discretion* to allow or deny the filing of "a new or different claim or counterclaim." *See* AAA RULE R-8 ("If an arbitrator has already been appointed, a new or different claim or counterclaim may only be considered if the arbitrator allows it."). AAA Rule R-51 provides the Arbitrator with *discretion* to extend any deadline for "good cause" so long as the extension does not "negatively affect[] the efficient resolution of the dispute." *See* AAA RULE R-51.

<u>Second</u>, the Arbitrator clearly had the agreed-upon authority to grant Wells Fargo's meritorious dispositive motion. AAA Rule R-33 unambiguously provides the Arbitrator authority to grant a dispositive motion.[8] In fact, the Snyders admit that they had no opposition to Wells Fargo's request for leave to file a dispositive motion. *See* Doc. 3 at 11 (¶ 22); *see also* Doc. 3-18 at 1 (granting leave to file a Rule 33 Dispositive Motion). Despite the opportunity to do so, the Snyders did not otherwise challenge the merits of Wells Fargo's dispositive motion.

---

[8] Rule R-33 provides: "The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case." *See* AAA RULE R-33.

Taken together, the record confirms that the Arbitrator's Final Award encompasses a mutual, final, and definite award upon the dispute submitted by the Snyders to the AAA in accordance with the Arbitration Agreement and the AAA Rules.

**B.     There is no evidence of arbitrator misconduct.**

In the second and third grounds, the Snyders complain that the Arbitrator's orders denying leave to amend and granting Wells Fargo's dispositive motion were "unfair and contrary to all principles of a just proceeding such that the arbitrator deprived [the Snyders] of a fair hearing." *See* Doc. 3 at 17–19.  The Snyders argue that the orders equate to a due process violation, misconduct, and a refusal to hear evidence.  *See* Doc. 3 at 18–19.  The Snyders' challenge implicates § 10(a)(3): "the arbitrator[] w[as] guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy . . .  or of any other misbehavior by which the rights of any party have been prejudiced."  *See* 9 U.S.C. § 10(a)(3).

"To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing."  *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) (quoting *El Dorado Sch. Dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001)).  A party is not denied a fair hearing if the record supports a basis on which the arbitrator "reasonably" could have reached its decision.  *See id.* (holding that the claimant was not denied a fair hearing when the record demonstrated several reasonable bases for denying a continuance).  Such is the case here.

1.     The record supports denying leave to file an untimely amended pleading.

The procedural aspects of AAA Rules R-8, R-21, and R-51 are similar to Federal Rule of Civil Procedure 16.  *See* AAA Rule R-8 (providing the arbitrator discretion to allow new or different claims), R-21 (authorizing the arbitrator to issue scheduling orders), and R-51

(authorizing the arbitrator to extend deadlines for "good cause").  Like the AAA Rules, Federal

Rule 16 authorizes courts to conduct pretrial hearings, issue scheduling orders limiting the time to

amend pleadings, and modify scheduling orders "only for good cause and with the judge's

consent."  *See* FED. R. CIV. P. 16(a), (b)(3)–(4).  The good-cause standard requires the "party

seeking relief to show that the deadlines [could not] reasonably [have been] met despite the

diligence of the party needing the extension."  *S & W Enters., L.L.C. v. SouthTrust Bank of Ala.*,

315 F.3d 533, 536 (5th Cir. 2003).  The federal standard comports with AAA Rule R-51's

efficiency goal and the Arbitrator's warning to the Parties in the scheduling order:

> All deadlines stated herein will be strictly enforced and adhered to in order to avoid
> unnecessary delay and to ensure an expeditious and fair resolution of this matter.

*See* Doc. 3-12 at 5; AAA RULE R-51 (cautioning against granting extension when it "negatively

affects the efficient resolution of the dispute).

Here, the Arbitrator denied the Snyders leave to file an amended pleading because, in part,

the proposed Amended Statement of Claim "would negatively affect the efficient resolution of the

dispute."  Doc. 1-4 at 194.  The Arbitrator identified two grounds supporting his conclusion:

(1)   the Snyders did not "set forth any facts which would constitute good cause
      for extending the period of time allowed in the December 15 Scheduling
      Order for amendment of pleadings"; and

(2)   the Snyders' "wholesale recasting of their entire legal framework" was
      "based upon the same set of facts which served as the basis for [the
      Snyders'] original Statement of Claim filed nine months ago."

Doc. 1-4 at 194.  Either ground is sufficient on its own to supply a reasonable basis for the

Arbitrator's decision.  *See also* **Ex. E** (identifying several additional grounds supporting denial of

leave).

    *a.  The Snyders failed to plead facts sufficient to establish good cause.*

  First, the Fifth Circuit routinely affirms trial court orders denying leave to amend when the movant fails to provide facts sufficient to support the "good cause" standard.  *See, e.g.*, *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021) ("There is no explanation for the five-month delay before pleading the facts and allegations in the Third Amended Complaint.  Nor is there any suggestion that any of those facts were unavailable when filing the previous three complaints.").  Like in *Olivarez*, the Snyders offered no explanation for their four-month delay before pleading the new causes of actions asserted in the proposed Amended Statement of Claim or otherwise suggested that any material facts were previously unavailable to them when they filed their initial claim.  *See* Doc. 3-18 at 398–425.

    *b.  The Snyders failed to offer any explanation for their delay.*

  Second, the Fifth Circuit routinely affirms denials of leave to amend when parties attempt to assert new legal theories that were previously available to them prior to the pleadings deadline:

- "Simply put, it is difficult to conceive of a reason why Plaintiffs-Appellants would not have been able to amend their complaint to include these various allegations in a timely manner.  Because good cause did not exist, the district court did not abuse its discretion in denying leave to file the proposed amended complaint."  *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 418 (5th Cir. 2021).

- "[Plaintiffs] had been aware of the factual underpinnings of the fraud claim for some time, and that they had not been diligent in pursuing the claim."  *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007).

- "[T]he same facts were known to [plaintiff] from the time of its original complaint to the time it moved for leave to amend.  [Plaintiff] could have asserted interference with contract from the beginning, but fails to explain why it did not."  *S&W Enterprises*, 315 F.3d at 536.

One federal district court case is particularly on point.

  In *Ruiz v. University of Texas M.D. Anderson Cancer Center*, the district court denied Plaintiff's motion to leave to amend her complaint filed five months after the pleadings deadline

and in response to defendant's motion to dismiss.  *See* 291 F.R.D. 170, 171 (S.D. Tex. 2013).  The

court reasoned:

> Plaintiff plainly seeks to entirely replace her existing claims—which have been
> active for ten months—with a newly asserted claim.  Such a wholesale
> transformation to the basis of the present action cannot be characterized as a mere
> 'clarification.'  Plaintiff's additional argument that Defendant could have filed its
> motion to dismiss 'months ago' and is attempting to dismiss Plaintiff's claims by
> 'lying in wait' is likewise unavailing. It is Plaintiff, rather than Defendant, who is
> seeking leave to file a pleading well after the deadline in contravention of a
> scheduling order that has controlled the timing in this case for eight months. The
> facts giving rise to Plaintiff's [new] claim are admittedly identical to those giving
> rise to her [old] claims. Plaintiff therefore had the opportunity to assert claims under
> the Rehabilitation Act at the time she previously amended her pleadings, or at any
> time prior to the March 15, 2013 deadline.

*Id*.

Like in *Ruiz*, the Snyders sought to entirely replace their existing legal theory—which had

been active for more than nine months from the filing of the initial Statement of Claim—with

newly asserted legal theories premised on the same facts previously known to the Snyders.  *See*

**Ex. E** at 5 (summarizing the new legal theories contained in the proposed amended pleading).

Therefore, the Arbitrator's order denying the Snyders leave to file an amended pleading is

supported by reasonable bases.

2.  <u>There is nothing fundamentally unfair about granting a dispositive motion after the
pleadings deadline has lapsed</u>.

The Snyders do not argue that they were denied the opportunity to oppose the Rule 33

Dispositive Motion.  *See Xerox Commercial Sols., LLC v. Segura*, 579 S.W.3d 170, 183 (Tex.

App.—El Paso 2019, no pet.) (holding that there were no bases to vacate an award when "[t]here

[was] no claim that [the claimant] was denied the opportunity to oppose the motion to dismiss, or

the procedure for presenting a response to that motion was deficient.") (applying the FAA).  Nor

could they.  The Snyders had knowledge of its grounds and supporting authority for at least forty-

eight days before their deadline to file a response.  *See* Doc. 3 at 11 (¶¶ 22–23).  Yet, despite having

the opportunity to do so, the Snyders chose not to address the merits of the Rule 33 Dispositive Motion. *See* Doc. 3-18 at 421–25.

Given this non-opposition, the Snyders argue in the Response that they were denied a fundamentally fair hearing because the Arbitrator dismissed their claims through a dispositive motion without hearing unspecified evidence related to claims not pled. *See* Doc. 3 at 19. Nonsense. The fact that the Final Award is the result of dispositive motion practice is not a ground for vacatur. *See, e.g.*, *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 604 (6th Cir. 2016) ("Indeed, given that district courts across the country frequently grant summary judgment against plaintiffs without an evidentiary hearing, based on Rule 56 of the Federal Rules of Civil Procedure, the argument that such a protocol is impermissible when adopted by an arbitrator is unpersuasive— particularly where, as here, the relevant arbitration agreement permits such a course.").[9]

As previously shown, the Arbitrator was well with his agreed-upon authority to deny the Snyders' untimely amendment and grant Wells Fargo's dispositive motion under AAA Rules. The record confirms that the Arbitrator conducted a fair proceeding by enforcing a deadlines and applying procedures previously agreed to by the parties. The Snyders' dissatisfaction with the resulting Final Award is not a ground for vacatur.

**C.    There is no evidence of fraud or bias.**

The Snyders' final argument is that the Final Award is "tainted with fraud, misconduct, and bias" and that the arbitrator engaged in "fraud, misconduct, and bias." *See* Doc. 19–20. The Snyders' arguments are premised on conclusory statements and unsupported, generalized AAA

---

[9] *See also Symank Bus. Sys. v. FedEx Ground Package Sys., Inc.*, No. 3:21-CV-0936-B, 2022 WL 270868, at *5 (N.D. Tex. Jan. 28, 2022*); Segura*, 579 S.W.3d at 182 (holding that award obtained through a motion to dismiss must be confirmed); *Boston v. World Sav. & Loan*, No. CV H-06-3795, 2007 WL 9736150, at *4 (S.D. Tex. Aug. 30, 2007), *report and recommendation adopted*, 2007 WL 9736148 (S.D. Tex. Sept. 26, 2007) ("In the end, the arbitrator exercised the discretion afforded her under both the law and the agreed-upon scheduling order when she dismissed the claim.").

bias in favor of Wells Fargo or, as the Snyders put it, "Wells Fargo's history of influencing AAA in Wells Fargo's favor." *See* Doc. 3 at 10, 20. The Snyders' final challenge implicates both § 10(a)(1) and (2): "the award was procured by corruption, fraud, or undue means" and "there was evident partiality or corruption in the arbitrator[]." *See* 9 U.S.C. 10(a)(1)–(2). Neither ground supports vacatur. Several reasons support this conclusion.

First, the Snyders' allegation that the AAA as an agency is allegedly biased in favor of Wells Fargo and that arbitration purportedly favors Wells Fargo disproportionately is wholly irrelevant and premised entirely on inadmissible hearsay. *See* Doc. 3 at 10, 19; FED. R. EVID. 802.

Second, the Snyders boldly accuse the *individual* Arbitrator of engaging in fraud without providing any supporting allegations—much less any evidence. *See* Doc. 3 at 19–20. Under § 10(a)(1), "a party who alleges that an arbitration award was procured by fraud must demonstrate: (1) that the fraud occurred by clear and convincing evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) the fraud materially related to an issue in the arbitration." *Barahona v. Dillard's, Inc.*, 376 F. App'x 395, 397 (5th Cir. 2010). The Snyders failed to proffer *any* evidence supporting any of these elements.

Third, the Snyders have no evidence that the Arbitrator was biased in Wells Fargo's favor. "Evident partiality is 'a stern standard.'" *Cooper*, 832 F.3d at 545 (quoting *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 281 (5th Cir. 2007)). For the arbitration award to be vacated, the Snyders "must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" Wells Fargo. *Id.* (quoting *Householder Grp. v. Caughran*, 354 F. App'x 848, 852 (5th Cir. 2009)). This is an "onerous burden" because the Snyders must demonstrate that the "alleged partiality [was] direct, definite, and capable of demonstration rather than remote, uncertain or speculative." *Householder Grp.*, 354 F. App'x at

852 (quotation omitted).  There is simply no evidence that the *individual* Arbitrator was partial to Wells Fargo.  *See Cooper*, 832 F.3d at 545.

Fourth, the Snyders cannot seriously question the impartiality of Arbitrator Daross given his prior experience.  Arbitrator Daross specifically disclosed that he had pursued multiple regulatory actions against financial institutions, including Wells Fargo, in his capacity as managing attorney in the Consumer Protection Division for the Office of the Attorney General of Texas.  *See* **Ex. D**.

Fifth, the Snyders have otherwise waived their right to challenge being compelled to arbitration in general, AAA as the arbitral forum, and the appointment of the Arbitrator.  The Snyders agreed to the order compelling arbitration, were provided with an option to agree to a different arbitral forum, and specifically selected AAA to initiate arbitration.  *See* Doc. 1-3 at 19; Doc. 3 at 10 (¶ 17).  A party "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court" in seeking vacatur of the arbitration award.  *See Gateway Techs, Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 998 (5th Cir. 1995) (quotation omitted), *overruled on other grounds by Hall St.*, 552 U.S. at 584–86.  Simply put, the Snyders cannot complain after receiving a losing result that the Arbitration was "tainted with fraud, misconduct, and bias" due to alleged bias that was discoverable by the Snyders' own admission prior to the Snyders initiating arbitration with AAA.

## PRAYER

"There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Assocs.*, 552 U.S. at 587.  Because the Snyders failed to establish any one of the four exclusive grounds for vacatur under 9 U.S.C. § 10, Wells Fargo respectfully requests an order confirming the Final

Award under 9 U.S.C. § 9.  Wells Fargo additionally requests all other relief in which it may be entitled to.

Respectfully submitted,

**B. David L. Foster**
State Bar No. 24031555
**Daniel Durell**
State Bar No. 24078450
LOCKE LORD LLP
300 Colorado Street, Suite 2100
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Facsimile)
daniel.durell@lockelord.com
dfoster@lockelord.com
chris.garcia@lockelord.com

**Robert T. Mowrey**
State Bar No. 14607500
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000
(214) 740-8800 (Facsimile)
rmowrey@lockelord.com

**ATTORNEYS FOR WELLS FARGO BANK, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on this the 8th day of August, 2023, as indicated below to the following:

**VIA ECF**
Butch Boyd
Jillian Scherrer
BUTCH BOYD LAW FIRM
2905 Sackett Street
Houston, TX 77098
butchboyd@butchboydlawfirm.com
jillianscherrer@butchboydlawfirm.com
***Attorneys for Respondents***

**VIA EMAIL**
Michael T. Gallagher
THE GALLAGHER LAW FIRM PLLC
2905 Sackett Street
Houston, Texas 77098-1127
mike@gld-law.com
***Attorneys for Respondents***

**VIA EMAIL**
L. Boyd Smith Jr.
THE BOYD SMITH LAW FIRM PLLC
2905 Sackett Street
Houston, TX 77098
bsmith@boydsmithlaw.com
***Attorneys for Respondents***

_____
Daniel Durell

134130312v.3 0108351/00001